## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BANK MIDWEST, N.A., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **Case No. 10-2387-JAR** |
| CRAIG J. MILLARD, et al. ) | |
| **Defendants.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff Bank Midwest, N.A. ("Bank Midwest"), brings this action alleging breach of guaranty agreements signed by *pro se* Defendant Craig Millard.  Defendant filed an Answer and Counterclaims (Doc. 12), alleging breach of contract, negligent misrepresentation, and fraud. This matter is before the Court on Plaintiff's Motion to Dismiss and Motion to Strike (Doc. 38). Plaintiff moves to dismiss Defendant's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6), and moves to strike Defendant's affirmative defense of promissory estoppel pursuant to Fed. R. Civ. P. 12(f).  Plaintiff's motion was filed April 20, 2012; Defendant's response was due May 11, 2012, but no response has been filed.  For the reasons stated below, the Court grants Plaintiff's Motion to Dismiss and Motion to Strike.

### I.      Discussion

Defendant has failed to file a response to Plaintiff's Motion to Dismiss and Motion to Strike, and the time to do so has expired.[1]  Under D. Kan. R. 7.4,

Absent a showing of excusable neglect, a party or attorney who

---

[1] *See* D. Kan. R. 6.1(d)(1)-(2) (requiring a response to a non-dispositive motion to be filed within fourteen days and a response to a dispositive motion to be filed within twenty-one days).

> fails to file a responsive brief or memorandum within the time
> specified in D. Kan. Rule 6.1(d) waives the right to later file such
> brief or memorandum. If a responsive brief or memorandum is not
> filed within the Rule 6.1(d) time requirements, the court will
> consider and decide the motion as an uncontested motion.
> Ordinarily, the court will grant the motion without further notice.

Although "[a] *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,"[2] a *pro se* litigant is not excused from complying with procedural rules, and is subject to the consequences of noncompliance.[3]  Thus, the Court grants Plaintiff's Motion to Dismiss and Motion to Strike as uncontested.[4] Nonetheless, the Court has considered Defendant's Counterclaim on its merits, and finds that dismissal is appropriate.

### A.      Factual Background

The following facts are taken in the light most favorable to Defendant.  On or about July 12, 2005, G&H Beach Development, Ltd. ("G&H") entered into a Construction Loan Agreement (Doc. 1-11) with Hillcrest Bank, a state bank chartered under the laws of Kansas.  In connection with the Loan Agreement, G&H executed two promissory notes in the amounts of $35.5 million and $8 million, with payment of the notes guaranteed by Defendant as well as Co-Defendant Charles Castor, Jr.  The maturity date of the first promissory note was extended several times, and Defendant eventually executed to Hillcrest a mortgage on a residence in Newport, Rhode Island (the "Newport Estate"), to provide additional security for G&H's indebtedness.

---

[2]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules).

[4]*See* D. Kan. R. 7.4.

On multiple occasions in the fall of 2009 and early January 2010, Hillcrest agent Stephen Seat represented to Defendant that Hillcrest would again extend the maturity date of the notes "if Mr. Millard and G&H improved Hillcrest's lien position on the Newport Estate and achieved a specified velocity of contracts for sales."  In an effort to quickly obtain the funds necessary to extinguish senior liens existing on the Newport Estate, Defendant, with Hillcrest's approval, sold his primary residence in Palm Beach, Florida, sooner than he had anticipated, resulting in a selling price well below fair market value.  In addition, G&H achieved the velocity of sales contracts required by Hillcrest.  However, when Defendant notified Mr. Seat that Defendant "stood ready" to improve Hillcrest's lien position by purchasing the senior liens, Mr. Seat indicated that Defendant was expected to have taken the "final step" of placing Hillcrest's lien in an improved position prior to engaging in further discussions with Hillcrest.  Hillcrest thus refused to extend the maturity date of the promissory notes, and withdrew from further communications with Defendant and G&H.

This action was originally filed by Hillcrest for breach of the guaranty agreements signed by Defendant; Hillcrest was subsequently placed in receivership by the Federal Deposit Insurance Corporation ("FDIC") and merged with Bank Midwest.  Notwithstanding Bank Midwest's substitution as Plaintiff in this action,[5] Defendant asserts that Hillcrest breached its covenant of good faith and fair dealing during its "contractual dealings" with Defendant, and further claims that Hillcrest's conduct constitutes negligent misrepresentation and fraud.  Finally, Defendant argues that the doctrine of promissory estoppel bars the claims against him.

**B.**      **Rule 12(b)(6) Standard**

---

[5]*See* Doc. 25 (granting Hillcrest's Motion to Substitute Party Plaintiff).  Defendant has not amended the Answer and Counterclaims since the substitution.

Under Fed. R. Civ. P. 12(b)(6), the court may grant a motion to dismiss if, drawing all reasonable inferences in favor of the plaintiff, a claimant fails to state a claim for which relief may be granted.[6]  To survive a motion to dismiss, the claimant must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and that contain "enough facts to state a claim to relief that is plausible on its face."[7]  As the Supreme Court has explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'"[8]  Additionally, "[a] claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged."[9]

Because Defendant is a *pro se* litigant, the court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[10]  However, the court may not provide additional factual allegations "to round out a [claimant]'s complaint or construct a legal theory on a [claimant]'s behalf."[11]  Further, the court need only accept as true

---

[6]*Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

[7]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

[8]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[9]*Id.*

[10]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997). Though Defendant is now proceeding *pro se*, he was represented by counsel at the time his Counterclaim was filed.  Doc. 12 at 12 (showing that the Counterclaim was submitted by attorney Catherine C. Theisen of Barber Emerson, L.C.).  Thus, the factual specificity of his pleadings was not affected by his current *pro se* status.  On the other hand, because Defendant now proceeds *pro se*, he does not have the aid of an experienced attorney in providing legal support for the sufficiency of his pleadings or in amending his pleadings if necessary.  The Court will therefore construe his pleadings under the relaxed standard.

[11]*Whitney*, 113 F.3d at 1173.

the claimant's "well-pleaded factual contentions, not his conclusory allegations."[12]

### C.    Breach of Contract Claim

Defendant alleges that, at some point during Hillcrest's "contractual dealings" with Defendant regarding a maturity date extension on the promissory notes, Hillcrest violated its implied covenant of good faith and fair dealing.[13]  Because this covenant must grow out of existing, express contractual duties, Defendant's claim necessarily fails unless a separate contract regarding the maturity date extension exists between the parties.[14]  Plaintiff contends that such a contract is not alleged with the factual specificity required by *Twombly* and *Iqbal*. Plaintiff further argues that, even if such a contract is sufficiently alleged, Defendant's claim for breach of the implied covenant is barred by 12 U.S.C. § 1823(e) and K.S.A. § 16-118.

The Court finds that Defendant does not allege facts plausibly establishing a separate contract for a maturity date extension, and thus does not sufficiently plead a breach of an implied covenant of good faith and fair dealing.  While Defendant is not required to directly plead every element of a contract,[15] the Court must be able to reasonably infer a contract's existence in a

---

[12]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[13]Doc. 12 ¶¶ 86-87.

[14]*See Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1233, 1243 (D. Kan. 2003) (stating that the implied covenant of good faith and fair dealing does not supply new contractual terms, but guides the construction of the explicit terms already contained in the agreement).  To the extent Defendant is alleging a breach of an implied covenant inherent in the guaranty agreements or the promissory notes, his claim necessarily fails.  Because the implied covenant cannot create new contractual duties, and because the guaranty agreements and promissory notes do not impose a duty upon either party to negotiate over a maturity date extension, there can be no duty to negotiate over a maturity date extension in good faith.  *See Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006) (rejecting an argument that the defendants, having once begun developing a certain piece of property, "assumed a duty to continue [to do so] under the implied covenant of good faith and fair dealing," since "the Fee Agreement did not impose an obligation for the defendants to develop the land.").

[15]*See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (noting that a complaint omitting some facts necessary to win at trial may still suffice to state a claim if the court can "plausibly infer the necessary unarticulated assumptions"); *see also Scheid v. Farmer Candy Shops, Inc.*, 89 F.2d 434, 436 (6th Cir. 1988) (finding that a complaint must contain either direct *or inferential* allegations respecting all material elements of a claim).

claim for breach of an implied covenant.[16]  Defendant's allegations, however, do not plausibly suggest the existence of a contract since the parties apparently did not have a meeting of the minds on all the essential terms of the agreement.[17]  One essential term, in particular, is conspicuously absent from Defendant's pleadings: the new maturity date of the notes.[18]  Indeed, that Hillcrest's agent expected to have "further discussions regarding the extension of the Notes' maturity date" suggests that a final maturity date was not agreed upon, and that other terms of the agreement were undecided as well.[19]  As such, the existence of an underlying contract — and, consequently, a breach of an implied covenant of good faith and fair dealing — is speculative at best; Defendant's conclusory allegation that he had "contractual dealings" with Hillcrest does not suffice.[20]  Even under the relaxed *pro se* pleading standard, dismissal of Defendant's breach of contract claim is therefore warranted.[21]

Moreover, even assuming Defendant sufficiently alleges an underlying contract, his breach of contract claim is barred by statute since Plaintiff is an assignee of Hillcrest.[22]  12 U.S.C.§ 1823(e) prevents a party from asserting claims or defenses against later assignees of a

---

[16]*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[17]*See Phillips v. Easton Supply Co. v. Eleanor Int'l, Inc.*, 512 P.2d 379, 383 (Kan. 1973) ("In order for parties to form a binding contract, there must be a meeting of the minds as to all the essential terms thereof.").

[18]*See N.Y. Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 411 (10th Cir. 1996) (stating that the maturity date of the note was material to the agreement, and that a note without a specified maturity date was not a binding agreement); *see also Henley v. Carrington*, 164 P.2d 139, 140 (Kan. 1945) (finding it "clear" that a change in the maturity date of a note constituted a "material alteration").

[19]*See* Doc. 12 ¶ 73.

[20]*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 557 (2007).

[21]*See Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[22]*See* 12 U.S.C. § 1823(e)(1).

failed bank based on oral agreements that tend to diminish the rights or interests of assignees in the acquired assets.[23]  Section 1823(e) codifies what has become known as the *D'Oench, Duhme* doctrine, which is intended to encourage reliance by regulators and their assignees on the accuracy of bank records when evaluating the assets of failed financial institutions.[24]  Without § 1823(e) protection, prospective purchasers would be discouraged from buying the assets of failed banks because they would risk the assertion of claims and defenses based on side agreements not reflected in the written instruments.[25]

Courts have consistently held that § 1823(e) bars breach of contract claims based on side agreements similar to the one alleged here.[26]  Defendant seeks to diminish the rights of Plaintiff in the promissory notes signed by G&H; yet, the alleged oral agreement between Hillcrest and Defendant to extend the notes' term does not meet any of the requirements of § 1823(e)(1).[27] Further, because the agreement was not reflected in Hillcrest's records, both the FDIC and Plaintiff were likely to be misled by the records, directly implicating the policy rationales of  §

---

[23]*Id.* ("No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section . . . shall be valid against the [FDIC] unless such agreement–(A) is in writing . . . ."); *see also UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1179 (10th Cir. 1999) (holding that the statute "applies to actions brought by FDIC's assignees as well as by FDIC itself").

[24]*See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460-61 (1942).

[25]*See Adams v. Walker*, 767 F. Supp. 1099, 1106 (D. Kan. 1991).

[26]*See Mainland Sav. Ass'n v. Riverfront Assocs. Ltd.*, 872 F.2d 955 (10th Cir. 1989) (finding that the *D'Oench, Duhme* doctrine precluded guarantors from asserting a set-off claim based on failure to perform on an oral agreement to fund a second loan); *FDIC v. Investors X*, 775 F.2d 142 (6th Cir. 1985) (finding that the *D'Oench, Duhme* doctrine prevented enforcement of an alleged oral agreement releasing a guarantor from all liability on certain loans); *FDIC v. M & S Partners*, 626 F. Supp. 681 (N.D. Ill. 1985) (holding that the *D'Oench, Duhme* doctrine prevented oral modification of a written agreement).

[27]*See* 12 U.S.C. § 1823(e)(1).

1823(e).[28] The alleged agreement thus falls squarely within the statute's purview, precluding

Defendant's claim for breach of contract.[29]

A second statute also bars Defendant's breach of contract claim.  K.S.A. § 16-118(a)

precludes actions and defenses based on unwritten agreements to lend or delay repayment of

money, effectively operating as a statute of frauds for "credit agreement[s]."[30]  Though

promissory notes are not included within the statutory definition of "credit agreement,"[31] an

attempt to orally modify a promissory note imposes additional duties upon the creditor, and,

under Kansas law, transforms the promissory note into a credit agreement for which a writing is

required.[32]  The statute's fundamental purpose is to "prevent lawsuits based on disputed oral

agreements to lend money or the disputed terms for lending the money."[33]

Here, the alleged oral agreement to extend the maturity date of the promissory notes

attempts to alter the terms for lending and repaying the notes.  It thus falls within the definition

---

[28]*See D'Oench, Duhme*, 315 U.S. at 460 (finding an oral side agreement barred when the maker of the note lent himself to an arrangement whereby the banking authority was likely to be misled); *see also Adams*, 767 F. Supp. at 1106 (holding that the *D'Oench, Duhme* doctrine applied to transferees and assignees of the FDIC).

[29]*See Langley v. FDIC*, 484 U.S. 86, 95 (1987) (noting that the requirements for a side agreement's validity are "categorical"); *Mainland Sav. Ass'n*, 872 F.2d at 956 (finding that *D'Oench, Duhme* prevented enforcement of an oral promise to fund a second loan in an amount sufficient to pay off a prior loan); *Culbertson v. U.S.*, 960 F. Supp. 1497, 1505-06 (D. Kan. 1997) (rejecting a breach of oral contract claim based upon an agreement with the failed bank to release the plaintiff from being a guarantor on a loan).

[30]*See* K.S.A. § 16-117(a) (defining "credit agreement"); *id.* § 16-118(a) ("A debtor or a creditor may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged credit agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor.").

[31]*Id.* § 16-117(a).

[32]*See Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 495-97 (Kan. 1998) (explaining that promissory notes were excepted from the statute's coverage only to make clear that documents traditionally signed only by the debtor would continue to be enforceable without the creditor's signature, and finding that an oral modification of a promissory note constituted a credit agreement).

[33]*Id.* at 497.

of "credit agreement," and is clearly the type of oral agreement § 16-118 is designed to render

unenforceable.[34]  Accordingly, Defendant's breach of contract claim is dismissed.

### D.    Negligent Misrepresentation Claim

Defendant also alleges that Mr. Seat's representations regarding the maturity date

extension were made without the exercise of reasonable care or competence, and that Defendant

justifiably relied on those representations.[35]  He believes Hillcrest thus committed the tort of

negligent misrepresentation.[36]  Plaintiff responds that Mr. Seat's alleged representations cannot

constitute negligent misrepresentation under Kansas law, since they were statements of intent to

perform in the future.  Plaintiff also contends that 12 U.S.C. § 1823(e) and K.S.A. § 16-118 bar

Defendant's negligent misrepresentation claim.

Under Kansas law, "a person cannot negligently misrepresent a present intent to perform

in the future."[37]  Unlike § 530 of the Restatement (Second) of Torts, which imposes liability for

fraudulent misrepresentation of an intention to perform an agreement,[38] "§ 552 does not, by its

terms, apply to misrepresentation of an intention to perform an agreement . . . . the exclusive

---

[34]*See id.* at 495-97 (rejecting a breach of contract claim where the defendant orally agreed to renew the plaintiff's farm loan if certain conditions were met).

[35]Doc. 12 ¶¶ 76-78.

[36]*See Mahler v. Keenan Real Estate, Inc.*, 876 P.2d 609, 616 (adopting the tort of negligent misrepresentation as defined in RESTATEMENT (SECOND) OF TORTS § 552 (1976), which states: "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.").

[37]*Near v. Crivello*, 673 F. Supp. 2d 1265, 1279 (D. Kan. 2009) (citing *Bittel*, 962 P.2d at 501).

[38]*See* RESTATEMENT (SECOND) OF TORTS § 530 (1976).

remedy for misrepresentation of intention to perform an agreement lies in the action for deceit."[39]

Thus, promises to perform in the future may form the basis of an action for fraud, but not for

negligence.[40]  Moreover, "determining whether the alleged misrepresentations were ones of

present fact or ones of future intent is a question of law to be decided by courts."[41]

      The Court finds that Mr. Seat's alleged representations regarding a maturity date

extension were statements of intent to perform an agreement in the future, and thus cannot form

the basis of a negligent misrepresentation claim.  Hillcrest allegedly promised to take *future*

action to extend the term of the notes if Defendant met certain *future* conditions.[42]  Accordingly,

the statements relied on by Defendant are not the type of misrepresentations contemplated by §

552 of the Restatement, and are not actionable under a negligent misrepresentation theory.[43]

      Furthermore, even if Hillcrest's statements are actionable under § 552, Defendant's

negligent misrepresentation claim against Plaintiff is barred by 12 U.S.C. § 1823(e) and K.S.A. §

16-118, similar to his claim for breach of contract.  First, the Tenth Circuit has applied § 1823(e)

to preclude affirmative negligent misrepresentation claims against assignees of failed banks.[44]  In

*Castleglen, Inc. v. RTC*, the court held that affirmative tort claims, including those for negligent

misrepresentation, "should be treated like contract defenses barred by *D'Oench*.  If the *D'Oench*

[39]*Gerhardt v. Harris*, 934 P.2d 976, 986 (Kan. 1997) (quoting *City of Warrensburg, Mo. V. RCA Corp.*, 571 F. Supp. 743, 753 (W.D. Mo. 1983)).

[40]*See Bittel*, 962 P.2d at 664-65.

[41]*Zhu v. Countrywide Realty, Co.*, 165 F. Supp. 2d 1181, 1206 (citing *Bittel*, 962 P.2d at 501).

[42]*See Bittel*, 962 P.2d at 665 (finding that, because the defendant's promise to renew financing was conditioned upon future compliance with loan requirements, the statements necessarily pertained to an intent to perform in the future).

[43]*See id.*

[44]*See Castleglen, Inc. v. RTC*, 984 F.2d 1571, 1577-78 (10th Cir. 1993).

10

doctrine is to have any force, courts cannot permit debtors to evade its prohibitions simply by recasting their contract defenses as affirmative tort claims."[45]  Here, Hillcrest's alleged representations arose out of an unrecorded agreement likely to mislead Plaintiff; section 1823(e) thus bars Defendant's negligent misrepresentation action notwithstanding its framing as an affirmative tort claim.[46]  Further, K.S.A. § 16-118(c) explicitly bars an action for negligent representation based on an unwritten agreement like the one alleged by Defendant.[47] Accordingly, the Court dismisses Defendant's negligent misrepresentation claim.

### E.      Fraud Claim

Defendant additionally alleges that Hillcrest's representations regarding the maturity date extension were made with no intention of performing the promises, and were intended to induce Defendant to act in reliance upon them.[48]  Defendant thus seeks damages for fraud.[49]  Plaintiff responds that Defendant's fraud claim, similar to his claims for breach of contract and negligent misrepresentation, is barred by 12 U.S.C. § 1823(e).

In determining whether § 1823(e) bars claims and defenses of fraud, courts have drawn a distinction between fraud in the inducement, which renders contracts voidable, and fraud in the

---

[45]*Id.* (citing *Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir. 1990)); *accord Langley v. FDIC*, 484 U.S. 86, 93 (1987) ("Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.").

[46]*See Castleglen*, 984 F.2d at 1577.

[47]K.S.A. § 16-118(c); *cf. Bittel*, 962 P.2d at 497-98 (holding, *prior* to the addition of subsection (c) to K.S.A. § 16-118, 1998 Kan. Sess. Laws Ch. 56 (S.B. 531), that a plaintiff may pursue a negligent misrepresentation action even though a contract action based on the same representations was barred by § 16-118).

[48]Doc. 12 ¶¶ 81-82.

[49]*Id.* ¶¶ 83-84.

factum, which renders contracts void.[50]  Because voidable contracts are "assets" for the purposes of § 1823(e), the Supreme Court has held that the statute bars a defense of fraud in the inducement,[51] which "tend[s] to diminish or defeat the interest of the Corporation in any *asset*."[52] The Court, however, left open the possibility that fraud in the factum could take the agreement out of § 1823(e)'s reach, since void contracts are not "asset[s]" at all.[53]  Further, the distinction between fraud in the inducement and fraud in the factum "is equally applicable to [a] charge of fraud as an affirmative tort claim" as it is to a charge of fraud "as a contract defense."[54]

The Court finds that Defendant alleges fraud in the inducement, and that § 1823(e) therefore bars his claim.  Unlike fraud in the inducement, fraud in the factum occurs when the obligor makes an agreement "with neither knowledge nor reasonable opportunity to learn of [the agreement's] character or its essential terms";[55] in other words, it occurs when the obligor did not intend to be bound by such an agreement at all.[56]  Here, Defendant does not claim that the alleged promise by Mr. Seat somehow prevented him from understanding the character of the agreement itself or from knowing the actual terms of the agreement.[57]  Rather, Defendant claims

---

[50]*See Langley v. FDIC*, 484 U.S. 86, 87 (1987); *Castleglen*, 984 F.2d at 1577-78.

[51]*Langley*, 484 U.S. at 87.

[52]12 U.S.C. § 1823(e) (emphasis added).

[53]*See Langley*, 484 U.S. at 93-94.  *But see Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir. 1989) (expressing reluctance to read *Langley* as conclusively establishing fraud in the factum as an exception to § 1823(e), since doing so might exclude from the statute's purview "conduct that is without doubt precisely the type of conduct to which the section was meant to apply," solely on the basis of *dictum*).

[54]*Castleglen*, 884 F.2d at 1578.

[55]K.S.A. § 84-3-305.

[56]*Id.* at cmt. 1; *accord Langley*, 484 U.S. at 93 (explaining that fraud in the factum "is the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents").

[57]*See Castleglen*, 884 F.2d at 1578.

that he was deceived by Mr. Seat's intent to perform an agreement, the nature and essential terms of which were understood by both parties.[58]  This is a claim for fraud in the inducement, and may not be asserted against Plaintiff under § 1823(e).[59]  The Court therefore dismisses Defendant's fraud claim, and grants Plaintiff's motion to dismiss in its entirety.

### F.      Promissory Estoppel

In addition to the counterclaims, Defendant also advances an affirmative defense based on the doctrine of promissory estoppel.[60]  Plaintiff moves to strike the defense under Fed. R. Civ. P. 12(f), which allows the court to "strike from a pleading an insufficient defense."[61]  "[T]he decision to grant a motion to strike is within the discretion of the court.  If the defense is clearly insufficient as a matter of law, it should be stricken."[62]

Under Kansas law, promissory estoppel is ordinarily established by proof that a "promise was made under circumstances where the promisor intended and reasonably expected that the promise would be relied upon by the promisee and further that the promisee acted reasonably in relying upon that promise," if refusal to enforce it would sanction fraud or promote injustice.[63]

---

[58]*See* Doc. 12 ¶¶ 68-73.

[59]*See Covell v. Photo Images, Inc.*, 768 F. Supp. 308, 312 (D. Kan. 1991) (finding that the plaintiff alleged fraud in the inducement instead of fraud in the factum where the plaintiff claimed that he would not have entered into the agreement at issue had he known that the defendants never intended to repay the plaintiff).

[60]Doc. 12 ¶ 60.

[61]FED. R. CIV. P. 12(f).

[62]*Resolution Trust Corp. v. Scaletty*, 810 F. Supp. 1505, 1515 (D. Kan. 1992).

[63]*Marker v. Preferred Fire Ins. Co.*, 506 P.2d 1163, 1170 (Kan. 1973) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981)).

The Legislature, however, may overrule the doctrine's application if it chooses to do so.[64]  In that vein, Plaintiff contends 12 U.S.C. § 1823(e) and K.S.A. § 16-118 preclude Defendant's promissory estoppel defense.[65]  The Court agrees, and Plaintiff's Motion to Strike is granted.

First, the Court finds that 12 U.S.C. § 1823(e) bars Defendant's promissory estoppel defense.  Allowing promissory estoppel to circumvent § 1823(e) would undermine the statute's policy objectives by discouraging prospective purchasers from buying the assets of failed banks.[66]  For this reason, courts have consistently applied the *D'Oench, Duhme* doctrine to bar claims and defenses of promissory estoppel.[67]  Here, the alleged oral agreement between Defendant and Hillcrest was not reflected in Hillcrest's records, and was likely to mislead Plaintiff in evaluating Hillcrest's assets; this is the very type of agreement § 1823(e) was designed to render unenforceable.[68]  Accordingly, § 1823(e) precludes Defendant's promissory estoppel defense.

In addition, K.S.A. § 16-118(c) explicitly bars Defendant from asserting a promissory estoppel defense based on the alleged credit agreement.[69]  While the court in *Bittel v. Farm*

---

[64] *Cf. Bittel v. Farm Credit Servs. of Cent. Kan.*, 964 P.2d 491, 497-98 (applying promissory estoppel where "there was no intent to legislatively overrule the doctrine").

[65] Doc. 39 at 17-18.

[66] *See Adams v. Walker*, 767 F. Supp. 1099, 1106 (D. Kan. 1991); *see also Castleglen, Inc. v. RTC*, 984 F.2d 1571, 1576 (10th Cir. 1993) ("As the [*D'Oench, Duhme*] doctrine has evolved, its focus has shifted from the fraudulent, illegal, or secret character of the debtor's acts to the effect the acts have on the regulatory agency's ability to evaluate quickly and accurately a savings institution's assets.").

[67] *See FDIC v. Berr*, 643 F. Supp. 357, 361, 363 (D. Kan. 1986) (applying the *D'Oench, Duhme* doctrine to bar an affirmative defense of promissory estoppel); *see also FDIC v. Kasal*, 913 F.2d 487, 493 (8th Cir. 1990) (ruling that the counterclaim of promissory estoppel was barred by § 1823(e)); *Bowen v. FDIC*, 915 F.2d 1013, 1015 (5th Cir. 1990) (applying the *D'Oench, Duhme* doctrine to bar an affirmative claim of promissory estoppel).

[68] *See Adams*, 767 F. Supp. at 1106.

[69] K.S.A. § 16-118(c).

*Credit Services of Central Kansas, P.C.A.* held that § 16-118 did not bar the appellants from asserting a claim of promissory estoppel, it did so on the basis that there was "no intent to legislatively overrule the doctrine."[70]  In the year that case was decided, however, the Kansas Legislature added to § 16-118 subsection (c) which provides: "Failure to comply with provisions of subsections (a) and (b) shall preclude an action or defense based on . . . promissory or equitable estoppel."[71]  In light of the legislative intent to overrule the doctrine's application to credit agreements, and because the credit agreement alleged in the instant case fails to satisfy the requirements of subsections (a) and (b), promissory estoppel cannot render the agreement enforceable.  Accordingly, the Court grants Plaintiff's motion to strike.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiffs' Motion to Dismiss and Motion to Strike (Doc. 38) is granted.

**IT IS SO ORDERED.**

Dated: <u>July 3, 2012</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[70]*See* 962 P.2d 491, 497-98 (Kan. 1998).

[71]1998 Kan. Sess. Laws. Ch. 56 (S.B. 531).